IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 13-cv-03135-RBJ

DOROTHY MURPHY and
HEATHER CREAZZO, on behalf of themselves and all others similarly situated,

     Plaintiffs,

v.

LENDERLIVE NETWORK, INC.,

     Defendant.

---

# ORDER

---

This matter is before the Court on Plaintiffs' Motion for Certification of WARN Class and Related Relief [ECF No. 27], Defendant's Motion to Stay Decision on Plaintiffs' Motion for Certification of Warn Class and Related Relief [ECF No. 34], and Defendant's Motion for Partial Summary Judgment [ECF No. 39]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

The plaintiffs assert violations of the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101, *et seq.* and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* The Court recently granted the plaintiffs' motion for conditional certification of a collective action under Section 216(b) of the FLSA. [ECF No. 60]. The current motions concern only the WARN Act claims.

The two named plaintiffs, Ms. Murphy and Ms. Creazzo, performed work as underwriters for the defendant employer, LenderLive Network, Inc. ("LenderLive"). LenderLive is a

Tennessee corporation with its principal place of business in Colorado.  It provides mortgage services for financial institutions in the United States.  The plaintiffs allege that they, along with approximately 120 similarly-situated former employees, were terminated without cause as part of, or as the result of, a mass layoff ordered by the defendant on or about October 15, 2013. They further allege that they did not receive either 60 days' advance written notice of their terminations or 60 days' pay and benefits in lieu of notice.  Complaint [ECF No. 1] at ¶¶ 1, 46. According to the plaintiffs, the failure to so notify or pay the affected employees constitutes a violation of the WARN Act.  The defendant denies this allegation and asserts a number of affirmative defenses.  First Amended Answer [ECF No. 12] ¶¶ 1, 46; p. 8.

The plaintiffs move for certification of a WARN class pursuant to Fed. R. Civ. P. 23. [ECF No. 27].  The defendant moves for partial summary judgment on the grounds that it did not lay off enough employees to violate the WARN Act.  [ECF No. 39].  The defendant also moved to stay a decision on the plaintiffs' motion for class certification pending the outcome of its then-forthcoming motion for partial summary judgment.  [ECF No. 34].  The Court addresses each of these pending motions herein.

## A. Defendant's Motion for Partial Summary Judgment [ECF No. 39] & Motion to Stay [ECF No. 34].

The defendant moves for partial summary judgment, arguing that it did not lay off enough employees to trigger the WARN Act.  The plaintiffs respond that discovery is still ongoing, and that they need more evidence before they can determine the validity of this contention.  The Court agrees with the plaintiffs and therefore denies this motion.

The Court grants summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

However, "summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986); *see also Dreiling v. Peugeot Motors of Am., Inc.*, 850 F.2d 1373, 1376 (10th Cir. 1988).  Under Fed. R. Civ. P. 56(d) (formerly Rule 56(f))[1], "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

The WARN Act requires employers to provide 60 days' advance notice to employees who will be subjected to a mass layoff or a plant closing ("affected employees").  29 U.S.C. § 2102(a).  The term "affected employees" is defined as "employees who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer."  29 U.S.C. § 2101(a)(5).  The plaintiffs claim that they are affected employees because they were part of a mass layoff, which the WARN Act defines as a reduction in force ("RIF") that:

> (A) is not the result of a plant closing; and
>
> (B) results in an employment loss at the single site of employment during any 30-day period for—
>
> (i)     (I) at least 33 percent of the employees (excluding any part-time employees); and
>
> (II) at least 50 employees (excluding any part-time employees); or
>
> (ii) at least 500 employees (excluding any part-time employees)

---

[1] The December 2010 amendments to Fed. R. Civ. P. 56 recodified Rule 56(f) as Rule 56(d) "without substantial change."  Fed. R. Civ. P. 56 advisory committee's note (2010); *see also W. v. Yeaton*, No. 09-CV-01268-MSK-KLM, 2011 WL 42140 at *2 n.6 (D. Colo. Jan. 6, 2011) ("There is no apparent substantive difference between the former Rule 56(f) and the current Rule 56(d) . . . .").

*Id.* § 2101(a)(3).  The WARN Act also specifies that employment losses for two or more groups of employees at a single site of employment which in the aggregate exceed the minimum number of layoffs and which occur within any 90-day period will be considered a mass layoff, "unless the employer demonstrates that the employment losses are the result of separate and distinct actions and causes and are not an attempt by the employer to evade the requirements of [the WARN Act]."  *Id.* § 2102(d).

The defendant contends that "[n]o mass layoff occurred here."  [ECF No. 39 at 7].  It maintains that it has compiled data spanning all layoffs that occurred between August 5, 2013 and December 31, 2013 (beyond a 90-day window), and that "[o]ver that entire period, LenderLive did not lay off fifty employees at any single site of employment."  *Id.*  Instead, it laid off 46 employees in Glendale, CO; 44 employees in Madison Heights, MI; and one in Kansas City, MO.  *Id.*  LenderLive contends that it likewise did not meet the 33% threshold to trigger the WARN Act's notification requirements.  It maintains that it laid off 11.9% of its workforce in Glendale; 27.8% in Madison Heights; and 4% in Kansas City.  *Id.* at 8.  LenderLive supports its motion with a lengthy spreadsheet from which this information was distilled.  [ECF No. 39-2]. The spreadsheet includes the name of each individual employed during this time period, his or her termination date (if terminated), the reason for termination (again, if terminated), and his or her employment site.  *Id.*  The defendant contends that these are business records admissible as evidence under the federal rules.

The plaintiffs argue that there are documents that they seek (and have been seeking) in discovery that might prove that the reduction in force was larger in these offices—or at least in the Madison Heights office—such that the WARN Act was in fact triggered.  The defendant responds that the plaintiffs' distrust of its figures is inappropriate as it suggests that the defendant

is misrepresenting facts to the Court.  The Court has no reason to suspect that any misrepresentation has occurred.  But I am not persuaded that a party should be forced to rely on partial evidence before it has a chance to complete its discovery.  If the necessary numbers are not there, the Court assumes that the plaintiffs will not further pursue the claim.

The plaintiffs have also expressed concern about the "site of employment" classification that the defendant has assigned to each of its employees.  The WARN Act regulations demand a fact-intensive inquiry into what constitutes an offsite employee's "site of employment."  *See Frymire v. Ampex Corp.*, 61 F.3d 757, 765 (10th Cir. 1995) ("[A] 'single site of employment' determination is a mixed question of law and fact . . . .").  In particular, the regulations define the "site of employment" as the site to which the remote employees "are assigned as their home base, from which their work is assigned, or to which they report."  20 C.F.R. § 639.3(i)(6).  Many of LenderLive's underwriters worked remotely.  These individuals are given "site of employment" designations in the defendant's files, but it isn't clear whether these classifications correspond to the definition established in the regulation.  It appears that the designations have been offered without explanation, let alone proof of overlap with the regulation.  The plaintiffs seek information about the remote employees, such as how their work was assigned and by whom, and to which offices their supervisors reported.  *See* Decl. Raisner [ECF No. 42-1] ¶ 20.  That is what discovery is for.

The Court need not at this time address plaintiffs' additional arguments.  The motion is premature, and accordingly, it is denied.  Because the Court has ruled on this motion before the plaintiff's motion for class certification, the defendant's motion to stay is denied as moot.

### B. Plaintiffs' Motion for Class Certification [ECF No. 27].

The plaintiffs move for certification of a WARN class pursuant to Fed. R. Civ. P. 23, to be comprised of all underwriters employed by LenderLive and who were terminated without cause on or about October 15, 2013, within 90 days of October 15, 2013, or in anticipation of, or as the foreseeable consequence of, a mass layoff on or about October 15, 2013.  Proposed Notice of Class Action [ECF No. 27-4].  The plaintiffs likewise seek appointment of Outten & Golden LLP as Class Counsel, appointment of plaintiffs as Class Representatives, and approval of the Notice of Class Action, and other such relief as this Court may deem proper.  The motion is supported by the attached declarations of the plaintiffs and of René S. Roupinian, a partner at Outten & Golden, LLP.

*1. Class Certification*

The plaintiffs allege that they and other similarly situated former employees were terminated on or about October 15, 2013 without cause; that these former employees, as well as others who suffered a loss of employment as the reasonably foreseeable consequence of the mass layoff, are "affected employees" as defined by 29 U.S.C. § 2101(a)(5); that these former employees did not receive 60 days' advance written notice of the mass layoff, as required by the WARN Act; and that LenderLive failed to pay these former employees 60 days' wages and fringe benefits, as required by the WARN Act.  [ECF No. 27 at 7].

 Four factors must first be met in order to certify a class action under Fed. R. Civ. P. 23: numerosity, commonality, typicality, and adequate representation.  In particular, the plaintiffs must show that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  The

Court finds that the plaintiffs have met their burden of showing that the prerequisites for class certification are present in this case.

To begin, the plaintiffs have shown that the class is so numerous that joinder of all members is impracticable.  The Tenth Circuit has never prescribed a minimum number of potential class members necessary to satisfy numerosity but has instead left such a decision to the discretion of the district courts based on the particular circumstances of the case.  *See Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006).  Joinder, as an alternative to class certification, might be particularly impractical where "the individual claims are relatively small in relation to the cost of litigation."  *Maez v. Springs Auto. Grp., LLC*, 268 F.R.D. 391, 395 (D. Colo. 2010).  In this case, the individual claims for 60 days' of wages and benefits are relatively small compared to the cost of litigation.  *See Belote v. Rivet Software, Inc.*, No. 12-CV-02792-WYD-MJW, 2013 WL 2317243 at *2 (D. Colo. May 28, 2013) (finding the same in a WARN Act case).  Furthermore, the plaintiffs have alleged that as many as 120 former employees may be part of this class.  Taken together, the Court finds that the numerosity requirement has been met.  Even if only 50 employees were part of the class—the minimum number under the WARN Act claim alleged—the Court would still find the numerosity requirement to have been met, as joinder would remain impracticable.

Commonality is likewise satisfied.  The plaintiffs allege that they and the putative class members were terminated as part of a common plan stemming from the defendant's decision to effectuate a mass layoff of its underwriters without notice, in violation of the WARN Act.  The factual and legal questions stem from a common core of facts regarding the defendant's actions and a common core of legal issues regarding every putative class member's rights, as follows: (a) LenderLive employed more than 100 employees; (b) all of the putative class members are

protected by the WARN Act; (c) the putative class members were employees of the defendant; (d) LenderLive discharged the putative class members within 90 days of October 15, 2013 in connection with a mass layoff; (e) the putative class members were "affected employees" as defined by the WARN Act; (f) LenderLive terminated the employment of the putative class members without cause; (g) LenderLive did not give the affected employees at least 60 days' prior written notice of the layoff; and (h) LenderLive did not pay the affected employees 60 days' wages and benefits in lieu of notice. *See Belote*, 2013 WL 2317243 at *2. The only differences are minor, namely, each employee's rate of pay and his or her specific date of termination. *See id.* The Court finds that the plaintiffs have shown that there are questions of law or fact common to the class, thereby meeting the second element for Rule 23(a).

Regarding typicality, "[a] named plaintiff's claim is 'typical' when it arises out of the same event, practice, or course of conduct of the defendant, and is based on the same legal theory on which the class claims are predicated." *United Food & Commercial Workers Union v. Chesapeake Energy Corp.*, 281 F.R.D. 641, 652 (W.D. Okla. 2012) (citing *Baby Neal v. Casey*, 43 F.3d 48, 57–58 (3d Cir. 1994)). "[T]ypicality exists where, as here, all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances." *D.G. ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1199 (10th Cir. 2010). "The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982). The Court finds that the typicality requirement has been met. In particular, this case arises out of the defendant's

alleged failure to provide notice under the WARN Act.  This course of conduct allegedly resulted in injury to all of the putative class members, including the plaintiffs.  Furthermore, the plaintiffs allege that neither they nor the putative class members received 60 days' written notice or, in the alternative, 60 days' wages and benefits.  The named plaintiffs are not seeking any additional or alternative relief that would create a conflict with the interests of the putative class members.  In sum, the named plaintiffs' claims arise out of the same course of conduct of the defendant, and are based on the same legal theory on which the class claims are predicated.

Finally, the Court must address whether there is adequacy of representation.  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (internal quotation marks and citation omitted).  For the reasons discussed above, the Court finds that there are no conflicts of interest between the named plaintiffs and the putative class members.  As to the second question, it appears from Ms. Roupinian's declaration that class counsel is sufficiently qualified, experienced, and generally able to conduct the proposed litigation.  *See* [ECF No. 27-2].  Proposed class counsel has been diligent in prosecuting the plaintiffs' claims thus far.

Based on the foregoing, the four prerequisites of Rule 23(a) have been met.  However, in addition to meeting these requirements a putative class must also meet one of the three requirements under Rule 23(b).  Here, the plaintiffs seek class certification under Fed. R. Civ. P. 23(b)(3).

Rule 23(b)(3) provides for class certification where "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a

class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The following factors are pertinent to making such a finding:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "Class wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject to only individualized proof." *United Food*, 281 F.R.D. at 655 (internal quotation marks and citation omitted).

First, as discussed above, individual lawsuits as well as joinder are impractical in a case such as this, where many of the individual claims are relatively small. Second, common questions of fact and law have been shown to predominate over the minor questions affecting individual claims. There is no indication that the plaintiffs or any of the putative class members have an interest in individually controlling the prosecution of separate actions. I do not foresee any particular difficulties in managing this case as a class action. Frankly, it is not clear to me why the defendant would not benefit from class treatment if, as it contends, the facts when fully developed will show that the WARN Act claim cannot proceed. In any event, the Court finds that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The defendant opposes this motion on the grounds that the class cannot be adequately identified. The class consists of all underwriters employed by LenderLive who were terminated

10

without cause on or about October 15, 2013, within 90 days of October 15, 2013, or in anticipation of, or as the foreseeable consequence of, a mass layoff on or about October 15, 2013. [ECF No. 27-4]. The defendant intermixes the need adequately to *identify* a class with the ability to prove that LenderLive violated the WARN Act by laying off enough employees. *See* [ECF No. 35 at 2–3]. Yet the merits of the claim cannot and need not be resolved at this time. Furthermore, such an argument is inextricably linked to the defendant's motion for partial summary judgment, which the Court has already denied.

*2. Appointment of Class Counsel and Class Representatives*

The Court has determined that Outten & Golden LLP will adequately represent the class and hereby appoints the firm to act in that capacity.

*3. Notice of Class Action*

In a Rule 23(b)(3) action the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice "must clearly and concisely state in plain, easily understood language," the following:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

The "Federal Rules of Civil Procedure allow the district court discretion in fashioning notice in class actions . . . ." *Burns v. Copley Pharm., Inc.*, 132 F.3d 42, No. 96-8054, at *3

(10th Cir. 1997) (unpublished).  The Court has reviewed the proposed notice [ECF No. 27-4] and finds that it generally meets the listed criteria.  However, the Court exercises its discretion to require certain modifications to the proposed notice.

First, I note that the defendant objects to the term "terminated without cause" as part of the definition of the class.  It argues that this term is "vague and misleading, and does not necessarily describe all employees who were terminated in LenderLive's layoffs."  [ECF No. 27 at 4].  The defendant suggests instead the phrase "terminated as part of a mass layoff."  As I see it, however, being terminated "as part of a mass layoff" is more vague and confusing than being terminated without cause.  Moreover, whether the terminations constituted a "mass layoff" is a determination to be made by this Court at a later date.  The term "without cause" is taken directly from the WARN Act's definition of "affected employees," which includes those terminated during the relevant time period "*other than a discharge for cause*, voluntary departure, or retirement."  *See* 29 U.S.C. § 2101(a)(6) (emphasis added).  The Court is not persuaded that the term "terminated without cause" is vague or misleading.

Next, the defendant argues that the manner by which individuals may opt out of the class action is overly burdensome.  I agree.  The notice requires that opt-out notifications be sent via certified mail, return receipt requested.  Certified mail is expensive, and it requires individuals to make a trip to the post office.  Using the United States Post Office's online Postage Price Calculator, a regular letter costs $0.49 to mail; including certified mail and return receipt services increases the cost to $6.49.[2]  It might be that some individuals, even if they might otherwise wish to opt out, would not be inclined to make a trip to the post office and then to spend an extra $6 mailing back a one-page form.  I see no reason why this form cannot be returned via regular

---

[2] The Postage Price Calculator can be found here: http://postcalc.usps.com/.  The Court determined these prices by looking up the cost to send a letter weighing one ounce from Denver to New York City and then selecting "Add Extra Services" to discover the cost of adding certified mail and return receipt.

mail, the same method that (as the defendant points out) Plaintiffs' counsel preferred for its FLSA collective action opt-in members to use, in addition to fax and email.  The type of mail should not be used to gain a strategic advantage.  It should be a means of giving class members a relatively easy method for communicating their wishes, whether it be to opt-out in the WARN matter or to opt-in in the FLSA matter.  The Court orders that any notice sent to members of the WARN Class include a pre-stamped pre-addressed envelope for easy return of the opt-out form in the event that the notified class member decides he or she does not want to take part in the action.  The opt-out class members shall also be given (and notified of) the right to return the form via fax or email.

The proposed notice calls for the opt-out form to be "received by" the opt-out date.  This requirement rejects the standard mailbox rule and, in doing so, unnecessarily narrows the window of time by which the class members may opt out.  Again, by comparison, the plaintiffs' FLSA collective action opt-in form merely requires that the consent to join be "postmarked, emailed, or faxed" by the last day of the 90-day opt-in window.  *See* [ECF No. 28-1].  The Court finds that individuals should be given the same opportunity to opt out of an action as they are given to opt in.  As such, the opt-out notice's time frame for responding shall be changed to mirror the language in the FLSA collective action notice, in particular providing that the form need only be postmarked, emailed, or faxed by the opt-out date.

The defendant also argues that a 30-day opt-out window is too short in comparison to the 90-day opt-in window for the FLSA action.  In particular, the defendant contends that if both the FLSA and WARN Act notices are certified, they will likely go out to many of the same former employees; in order to avoid confusion, the opt-in and opt-out windows should be set for the same amount of time.  The plaintiffs respond that the potential for confusion is merely

speculative and that the number of FLSA class members is much larger than the potential

WARN class.  In particular, the WARN class members are a small, discrete group of individuals

terminated less than a year ago whereas the FLSA class entails *all* underwriters (including those

still employed by LenderLive) who worked for the defendant in the past three years.  The

plaintiffs further argue that the WARN class members should not need 90 days to make the

decision to opt out, whereas the FLSA class may need such time to decide to opt in.  The Court

agrees.  The WARN Act notice lays out a simple position: if the class member did not receive

proper notice of the alleged mass layoff, she would be entitled to an award of 60 days' wages

and benefits.  Digesting this information, determining its applicability to the reader, and making

a decision whether to opt out should be somewhat straightforward.  On the other hand, the FLSA

claims are more complex.  Those notified may have a number of concerns.  For example, an

underwriter still employed by LenderLive may base her decision on how she would be perceived

or treated at work should she choose to opt in.  Or she may need time to determine whether she

has any proof of unreported overtime; if she doesn't, she may decide not to opt in.  If anything,

the comparative length of the notices goes to the complexity of the legal matters: the WARN Act

notice is two pages with a half-page opt-out form, whereas the FLSA notice is seven pages with

a full-page opt-in form.  With that said, the Court finds that a 30-day opt-out window may be too

short for a proper decision to be made, and it is potentially prejudicial to the defendant.  The

Court therefore exercises its discretion to extend the window to 60 days.

Finally, the defendant seeks a one-month period in which to determine who is properly a

member of the putative class.  The Court denies this request as moot.  Considering that the

motion was filed on May 30, 2014, the Court finds that the defendant has had plenty of time in

which to determine the members of the putative class.  In fact, it presumably compiled this information in order to file its motion for partial summary judgment.

## ORDER

For the foregoing reasons, Plaintiffs' Motion for Certification of WARN Class and Related Relief [ECF No. 27] is GRANTED, with class notice to be amended in a manner consistent with this opinion; Defendant's Motion to Stay Decision on Plaintiffs' Motion for Certification of Warn Class and Related Relief [ECF No. 34] is DENIED AS MOOT; and Defendant's Motion for Partial Summary Judgment [ECF No. 39] is DENIED.

DATED this 22nd day of October, 2014.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge